WILLIAM N. BELTER, District Attorney, Waushara County
You have requested my opinion concerning the meaning of the phrase "past consideration" as it is used in sec. 943.24 (3), Stats., relating to the issuance of worthless checks in the following two fact situations: *Page 169 
 "Under the first set of circumstances `A' sold corn to `B', who picked the same upon `A's' property for two days. Upon completion of the picking and weighing of the corn on November 8, 1974, the final amounts due were transmitted by `A' to `B' who issued a check dated November 9, 1974, which he brought to `A's' farm on November 11, 1974, in payment for the corn purchased. Apparently, there was no intention to extend any credit in this matter, and `A' expected to receive payment upon completion of the delivery of the corn.
 "The second situation involves an employee in a restaurant, who was to manage the restaurant for the owner. The owner, in checking out the cash register, found that the amount of money that should have been available was substantially `short' and upon the discovery thereof, the employee responsible for the cash register and the owner came to an understanding as to the amount of the shortage and a check in settlement therefore was issued by the employee that same evening. Shortly thereafter, the employee informed a cook in the kitchen, that he was going to cancel the check in the morning, and when the check was presented for payment, payment had been stopped."
You express concern that in both of the above situations, it is not clear whether or not the consideration for the issuance of the checks would constitute a "past consideration" within the meaning of the criminal statute.
Section 943.24, Stats., reads as follows:
 "(1) Whoever issues any check or other order for the payment of money which, at the time of issuance, he intends shall not be paid is guilty of a misdemeanor and may be fined not more than $1,000 or imprisoned not more than one year or both.
 "(2) Any of the following is prima facie evidence that the person at the time he issued the check or other order for the payment of money, intended it should not be paid:
 "(a) Proof that, at the time of issuance, he did not have an account with the drawee; or
 "(b) Proof that, at the time of issuance, he did not have sufficient funds or credit with the drawee and that he failed *Page 170 
within 5 days after receiving notice of nonpayment or dishonor to pay the check or other order: or
 "(c) Proof that, when presentment was made within a reasonable time, the issuer did not have sufficient funds or credit with the drawee and he failed within 5 days after receiving notice of nonpayment or dishonor to pay the check or other order.
 "(3) This section does not apply to a postdated check or to a check given for a past consideration, except a payroll check."
Subsection (3) appears to provide that one who gives another a check or order for the payment of money which, at the time of issuance he intends not to be paid, is not subject to criminal liability under sec. 943.24 (1), Stats., if the check or order is postdated or is given as compensation for past consideration, except in the case of a payroll check. The problem is to determine what constitutes "past consideration."
Although none of the forerunners to sec. 943.24, Stats., contain the specific exceptions set forth in subsec. (3) of the current statute, it is evident from a plain reading of sec.943.24, Stats., and from other unchallenged interpretations of the earlier statutes, that the prohibition against issuing worthless checks was designed to address simultaneous transactions in which goods or services are transferred in exchange for a check delivered at the time.
It is my opinion that in either case you describe prosecution would not properly lie under sec. 943.24, Stats., because in each case past consideration motivated issuance of the check.
Your question has been raised tangentially in Opinions of the Attorney General interpreting earlier worthless check statutes. In Wisconsin, criminal liability for issuing worthless checks was first set forth in sec. 4438a, Ann. Stats. (1889), which was created by ch. 136, Laws of 1887. Section 4438a, Stats. (1915), prohibited the making, uttering, or delivering of a worthless instrument commonly referred to as a bank check, with the intent to defraud another. In 1 Op. Att'y Gen. 195 (1913), one of my predecessors was asked to render an opinion as to the applicability of sec. 4438a, Stats. (1911), to a situation where a merchant had let run for some time an account with a firm from which he had purchased goods. Upon being pressed for the money he owed, the merchant issued to the firm three *Page 171 
postdated checks. The first check was protested by the bank when presented for payment because of insufficient funds.
This office opined that the merchant had given a check for a preexisting debt and that:
 ". . . It was not given to obtain goods, wares and merchandise or to deprive the party to whom given of anything valuable; it was given for a debt already contracted prior to the giving of the check. . . ." 1 Op. Att'y Gen. 196, 197 (1913).
While it is true that the check was postdated by 12 days, it is also true that it was delivered in partial payment of a debt which had "run for some time:" and that its issuance represented and was accompanied by only the merchant's promise that the money would be at the bank at a future date. The firm could not have been persuaded to turn title to the goods over to the merchant on the faith of the check because said check was not delivered until sometime after title was transferred.[1]
Section 4438a, Stats. (1915), was repealed by ch. 164, Laws of 1917, and replaced by a similar statute which, aside from creating a presumption to defraud based on the drawee's refusal to make payment on a check, draft or order, issued by another, contained no significant modification of the earlier statute.
Our supreme court reviewed a conviction obtained under the above statute in Merkel v. State, 167 Wis. 512, 167 N.W. 802
(1918), where the defendant apparently refused to try to rebut the aforementioned presumption that he intended to defraud the issuee from whom he had bought certain meats. In affirming the conviction the court stated:
 "The evidence also sufficiently shows prima facie
that the check was given for meats sold to the defendant and that at least some of the goods sold on the faith of the check were delivered at the time the check was given. . . ." Merkel v. State, supra, at p. 514. *Page 172 
Again, one key element necessary for successful prosecution under the worthless check statute then in existence was that possession of the goods be relinquished on faith that the purchaser had funds in the bank sufficient to pay the check given at the time possession was transferred.
In 11 Op. Att'y Gen. 137 (1922), this office was again presented with a set of facts similar to those presented in 1 Op. Att'y Gen. 195 (1913). The Attorney General cited the above quote from page 514 of Merkel v. State and concluded:
 "From the wording of this statute and from the history of it, it is manifest that the intent to defraud is a necessary element of the crime. When credit has been extended to the debtor it is difficult to see how he can defraud the creditor by issuing a check on a bank where he has no funds. He does not obtain money or other property by his implied false representations." 11 Op. Att'y Gen. (1922), at p. 140. See also 15 Op. Att'y Gen. 499, 501 (1926).
In 26 Op. Att'y Gen. 50 (1937) the Attorney General stated that there was no violation of sec. 343.401, Stats. (1925), (formerly numbered sec. 4438a, Stats.), where a person issued a worthless check for services rendered and, upon being asked a second time to pay for the services, issued another worthless check. The opinion explained:
 ". . . The relationship of creditor and debtor existed. The giving of the check, even though it was worthless, did not in any way change his relationship or injure the recipient of the check. In other words, the element of intent to defraud is never present in the giving of a check in payment of a past due account, for the reason that no fraud can be perpetrated by the giving of such check when it is in payment of a past due account. . . ."
Chapter 696, Laws of 1955, repealed sec. 343.401, Stats. (1953), and created in its place sec. 943.24, Stats. (1955), in conjunction with the enactment of the new Wisconsin Criminal Code.
The language of sec. 943.24, Stats. (1955), in expressly excluding from its scope postdated checks and those given for past consideration (with the exception of payroll checks) is in accord with the interpretation made by some of my predecessors and our supreme court in Merkel v. State, supra, of earlier worthless check statutes. *Page 173 
Subsection (3) of sec. 943.24, Stats., does not state what constitutes "past consideration" as that phrase is used in that subsection of the statutes. However, a look at the comments by the drafters of what eventually became sec. 943.24, Stats., is in order.
The draft replacement for sec. 343.401, Stats. of 1953, which became sec. 943.24, Stats., contained substantially the same language as current sec. 943.24, Stats., with the exception that subsec. (3) of the current statute was omitted. In defining the scope of that draft of the statute, the Legislative Council's comment read as follows:
 "LEGISLATIVE COUNCIL COMMENT: Scope. The principal difference between this section and the old one on issue of worthless check is in the intent. The old section required an intent to defraud. Therefore, it was held that issuing a worthless check for something which you have already obtained — the services of an employe, for example — was not covered by the old section because there was no intent to defraud. This state of the law was undesirable because it assumed that the only time society is harmed is when the actor receives some property at the time he gives the check. . . . [T]he only effective deterrent to this type of conduct seems to be an increase in the scope of the criminal sanctions." Wisconsin Legislative Council Reports, Vol. 3, pp. 94-95 (1949-1950). (Emphasis added.)
However, in a later draft of this statute the aforementioned subsec. (3) had been added and provided as follows:
 "(3) This section does not apply to a check given for a past consideration except a payroll check or to a postdated check." Wisconsin Legislative Council Reports, Vol. 2, pp. 118-119 (1951-1953).
In explaining the purpose for this restrictive provision in what eventually became the almost identical language of subsec. (3) of the current worthless check statute, the Judiciary Committee commented as follows:
 "COMMENT. This section covers persons who at the time they issue a check or other order for the payment of money, intend that it shall not be paid. As stated in subsection (3), two types of checks are not included: (a) a check given for a past consideration except a payroll check, and (b) a postdated *Page 174 
check. Payroll checks are included because they are always given for past consideration . . . . Postdated checks are not included . . . [because] [t]he person who takes a postdated check is put on notice that there may not be sufficient funds in the account of the issuer." Wisconsin Legislative Council Counsel Committee Report, Vol. 2, p. 119 (1951-1953). (Emphasis added.)
Aside from the above Judiciary Committee comment, the record is silent as to why the drafters modified the language in their later draft by adding subsec. (3). However, the record does indicate that several members of the Legislative Council attempted to have all forms of checks given for past consideration excluded from the reach of the statute for fear that to do otherwise "would extend the civil law into criminal cases." Wisconsin Legislative Council Reports, Vol. 5, p. 5 (1953-1955).[2]
The above chronology of events leading up to the enactment of our current worthless check statute demonstrates that the objective of the drafters was not to change the type of activity made criminal therein, except in the case of payroll checks, which are based on past consideration, and the issuance of which consequently cannot involve an intent to defraud. The exception in the case of payroll checks was added in order to address a specific problem in metropolitan areas where special reliance is placed on such checks. Had subsec. (3) not been added to the statute, any check, whether based on past or present consideration, would have fallen within its reach, provided the drawer's intent that the check not be paid were established.
There has been no legislation or Wisconsin case law defining the term "past consideration" as used in subsec. (3). The history of the development of sec. 943.24, Stats., suggests that checks given either for services already performed or for goods already received, or for a past due obligation, are examples of transactions involving past consideration because in each case the drawer is not receiving anything of value at the time the check is issued. *Page 175 
I am also of the opinion that the definition of "past consideration" which is used in contract law is inapplicable here. Black's Law Dictionary, page 380 (Rev. 4th Ed.), defines past consideration as "An act done before the contract is made, which is ordinarily by itself no consideration for a promise." This definition, however, is irreconcilable with the obvious interpretation given the phrase by the drafters of sec. 943.24, and alluded to in the above comments of the Judiciary Committee.
Applying the doctrine of "noscitur a sociis," the meaning of the phrase "past consideration" takes color and expression from the tenor of the entire statutory phrase of which it is a part and must be construed so as to harmonize with the context of sec.943.24 (3) as a whole. See Lewis Realty v. Wisconsin R.E.Brokers' Board, 6 Wis.2d 99, 94 N.W.2d 238 (1959). For example, a payroll check is not ordinarily thought of as being given for an act done before the employment contract is made; instead it usually follows an agreement as to the terms of employment, form of compensation, and the actual performance of the work. The only form of past consideration associated with a payroll check is derived from the fact that it is given in recompense (consideration) for work already performed and usually in accordance with an earlier agreement. It is apparent, therefore, that in employing the term "past consideration" to describe the class of transactions to which sec. 943.24 is inapplicable, the Legislature was using that term in the context of an act done at a former or preceding time and for which a check is subsequently issued; not an act which is done before a contract involving that act is made.
In the situations you have presented, both checks were given for past consideration. "B"'s check was given for corn which he had received from "A" at an earlier time, and it was compensation for a past due obligation. The restaurant employe's check was given as compensation or recompense to the owner for money which had disappeared from the cash register at an earlier time. In neither situation was there a service rendered or a fee or other form of consideration given the issuer simultaneous with the issuance of the check. Neither check was a payroll check. Therefore, it is my opinion that an action for prosecution of the check issuers would not properly lie under sec. 943.24, Stats. *Page 176 
Finally, the lack of express legislative or judicial guidelines make it impossible to determine how much time must pass between the issuance of a check and the provision of a service or commodity in order for past consideration to exist. Each case must be evaluated on the basis of the particular facts associated with it.
BCL:MKW
[1] For a further discussion of the necessity of title passing simultaneous with the issuance of a check before an action for prosecution could lie under sec. 4438a, R.S. 1889, see 4 Op. Att'y Gen. 25, 26 (1915).
[2] None of the above-cited comments to the revised worthless check statute were included in the final enacted statute. However, these comments are interpretative aids in determining the scope of this criminal statute.